This time we'll hear Niles v. Pan Am Railway, Railways. Good morning. May it please the Court, I am Murray Kaplan. I'm the attorney for the appellant, Charles Niles. The reason we brought this appeal is that the district court, in deciding summary judgment against us, decided two key factual issues. First, at what point did the train operators see that the object laying in front of them was a person? Second, at what point should the train operators have seen that it was a person? And the standard of care is expressed in the New York Court of Appeals case of Soto v. New York City Transit Authority. And the burden is reasonable care under the circumstances, which has been defined as that when the train operator sees a person on the tracks, then they are... Sees a person? Yes. Sees a person on the tracks that they are supposed to take whatever measures they can to stop before striking the person. I don't think your adversary would disagree with that. Yes, Your Honor, if I might continue. So this very same case does go on to say that it's also negligent if the... what is there to be seen. And in this situation, in two places in the district court case, they specifically in pages 10 and 11 of the decision, they specifically make findings of fact saying in one place, once it was apparent it was a person, the train operator slammed on the brakes, this is reasonable care. This finding was based solely upon the self-serving statements of the train operators. There were no other witnesses. My client is unconscious on the tracks. The train operators, the engineer... What other witnesses are there going to be? There are going to be no other witnesses, Your Honor. And if I might make that next point to address that question, which is that in Noseworthy versus the City of New York, the court, Judge Desmond, once again, New York Court of Appeals, said that a jury has the right to disregard the self-serving testimony of the train operators even if there are no contradictory witnesses available. And so clearly, as stated in Coleman versus New York City Transit Authority, these witnesses are interested witnesses even though they're not parties because they're trying to relieve themselves of culpability. So the question goes, well, have we presented issues of fact that might tend to indicate that the culpability is – I'm sorry, that credibility is a question. Mr. Kaplan, what exactly is the issue of fact, the material issue of fact? So the material issue of fact are two things. At what point did they see that this person laying on the track was – this object laying on the track was indeed a person? Did they see it earlier? I understand that what you're saying to us is that your evidence, your ability to contest the defendant's evidence would be to cross-examine witnesses and that on the basis of cross-examination alone, you're entitled to avoid summary judgment. That would be part of it, Your Honor, and the other part would be to present the other facts that would tend to show that it's hard to get into their mind and prove that they are lying. Perhaps we can do that. Perhaps we can't. They're there. They're traveling essentially a fifth of a mile over a minute, 1,110 feet towards an object in the center of the town, a human-size object that they concede actually hung over the left rail to the direction to the left and extended all the way to the right rail, the distance between the rails being 4 feet, 8 1⁄2 inches. So they knew it's a human-size object in the center of town. They knew that they were – Well, to my surprise, under New York law, and maybe this is what my colleague is getting at, all they have to – their only duty at that point is to blow their horn. Your Honor, if – so are you saying even if they know it's a person? I'm not saying anything. I'm just – to my surprise, I think that that's what I've read. No. Your Honor, with due respect, I do not believe that is the case. That is the case applicable to open-run cases. So an open-run case is when the train is operating in an area with – in a remote area where there aren't – there isn't an immediate population, and they're going at a high rate of speed. And so then we have this open-run rule, which is right there in the PJI, as an exception to the general rule set forth in SOTO, which says that, okay, on an open run, you can first just honk, blow your horn, and see if the person will get out of the way before you need to try to stop. It's only after you see that they're not going to get out of the way that you need to try to stop. But that is not the case when it's not an open run. And here it's the opposite of an open run. There's a 10-mile-per-hour speed limit in the village of Hoosick Falls. They were going 10 miles an hour. It was in the center of the village with houses and businesses on both sides, with people parking right along the track, with people – the operators admitted that they knew that people crossed in undesignated areas there. These are interested witnesses. Even in their testimony, they said – at one point they said, oh, we thought it was debris. Oh, we thought it was a garbage bag. Oh, we thought – But there's no difference between debris and a garbage bag, is there? Well, there is to me, Your Honor. A garbage bag is a garbage bag. When you're staring at something for over a minute and it's human size in the middle of the village, then is that credible? And that's something that in the case of Noseworthy v. The City, it says that the jury has the right – Was this at daylight or nighttime? It was daylight. It was straight ahead. They admitted that their view was totally unobstructed. They traveled over 1,000 feet, 1,110 feet. And when they were within 88 feet, that's when they applied the brakes. But the unrebutted testimony is that that's also when they understood that there was a person. That's when they applied the brakes. Your Honor, that's my whole point. It's not – it is unrebutted testimony of the sole witnesses, but the jury is entitled they are interested witnesses per Coleman, where it was the same facts. The only witnesses were the operators. And so the court said they're interested witnesses. When they're interested witnesses, we're entitled to cross-examine them. We're entitled to see if it makes sense. And we've got Soto that says there's two questions. One is when did they really see this person on the track? And the other is, okay, well, when should they have seen? There's more than one case that says that when – in the New York Court of Appeals, it says that even if they didn't see, if they should have seen, then that is the basis for negligence. And there's the PJI and there's Scurdy v. The City of New York, which is another court of appeals case, that says that the jury in assessing whether the train operators exercise reasonable care should be considering the density of the population, if it's likely that people are crossing there. Clearly, they should have seen that a human-size object, which they acknowledge right where people are crossing, right in the center of the village, was likely to be a person, something they should have seen. Roberts. You've reserved a couple minutes for rebuttal. We'll hear you then. Thank you. May it please the Court, Kathleen McCaffrey Baines for Pan Am Railways. I'll address first these purported issues of fact. There is no testimony, evidence, or any other suggestion that the victim in this accident could have or should have been identified by the crew as a human being earlier than the moment when they did do that. The suggestion that there are credibility issues here is not enough to overcome the failure to produce. But there are a lot of undisputed facts, which your adversary argues raises a fundamental jury question as to when they should have known it. I mean, I could go through them, but he has several times. It's broad daylight. It's 10 miles an hour. It's the middle of town. It's a place where people cross their cars. There, the objects span the rails. The people on the railroad know what the distance is between the rails. And the only thing is it didn't move. Whatever it was didn't move when the horn was blown. And then the question is, is it possible that somebody has passed out, fainted, or dead drunk? And therefore, why can't a jury, taking all those undisputed facts, come to the conclusion that they should have slowed down more? I believe they only ran over. They stopped about 20 feet short. 20 feet too long, yes, too far. It was incumbent on the plaintiff to produce an alternate fact to the testimony of the crew. There is nothing that questions that. But the testimony of the crew is, we didn't know. And the question is, should they have known? Now, they can't really give testimony on whether they – I mean, why would we have to give credit or anybody have to give credit to what they say as to what they should have known? They can give testimony that they didn't know, and my impression is that would have to be credited. The question is, should they have known, given all of these undisputed facts? Given that there is testimony from both members of the crew that they watched it continuously, it never moved, and it appeared to be debris or a garbage bag, and that as soon as it was identifiable as a human being, they put the brake on the train, the plaintiff had a duty to come forward with some fact to at least raise the suggestion that this trash bag or debris could have been identified earlier as a human being. Well, there was an expert report, was there not? It had nothing to do with the visual ability of the crew. It didn't suggest that they could have seen this person sooner. What the plaintiff relied on instead, Your Honor, is a theory or an argument, which this Court has refuted since 1917 in the McCarthy case, that just because the train was passing through a populated area, it should have had a heightened suspicion of something going on. In fact, this crew, once they observed something on the track, continued to monitor it the entire time as they approached, and as soon as it was identified, they stopped the train. That is undisputed testimony. The plaintiff could have come forward if it existed with some evidence to suggest that a person of appropriate and meeting the standard of eyesight required of a crew could have or should have seen that this was a person 100 feet sooner than they did, 200 feet sooner than they did. No such proof was put forward. So, therefore, the testimony is unchallenged. And as to the suggestion that cross-examination... How would you put in that testimony other than through an expert? I can't think of a way that they could, Your Honor, but they didn't. They didn't put it in in any form whatsoever. In fact, there's no testimony, there's no evidence below or anything in the record that suggests that the crew could have seen this as a person earlier than they did. The suggestion that they should be... Yes, Your Honor. Was the crew deposed? The crew was deposed at length, and you're leading directly to my point. The suggestion that they should be cross-examined is... I don't want to say... Is it possible on the basis of what we know from the deposition testimony in the record that a juror could think that there was something wrong with the testimony of the person who was deposed? Plaintiff deposed these two witnesses at length. There were no restrictions on the questioning. Plaintiff has been unable to come forward with any fact or purported fact which suggests that the testimony of these two witnesses is either incredible, unreliable, or self-serving, other than to suggest that they have an interest in the outcome of this case. The statute of limitations has expired. They are not subject to any criminal penalty, any violation of railroad law or operation, or any civil liability in this case. They have been deposed at length. Again, it was this court in 1917 that said, there's no duty to stop until you realize that the person cannot or will not remove himself from harm's way. That standard was reiterated in the Respenti case in 1997, which Judge Cabranes was on the panel of. That is the existing law in this case. There is no legal authority either under statute, regulation, common law, nor any public policy argument that has been put forth by the plaintiff to overturn century-old case law. There is no industry standard or practice that upon observation of an inanimate object, any action whatsoever need be taken to slow a train. All of the factual evidence that is before this court, this is the same evidence that would be before a jury, is that the crew was traveling within the speed limit. They gave appropriate warnings at the designated intersections. They monitored the situation closely. And as soon as they observed that it was not an inanimate object, they took action that was within the standard of reasonable care that this court has imposed. Plaintiff makes a very emotionally appealing argument. He was certainly tragically injured as a result of this accident. However, unfortunately, the state of the law does not require the duty that he seeks to impose on this crew, and to do so would have ramifications well beyond the unfortunate circumstances of Mr. Niles. We therefore respectfully ask that this court affirm the lower court's decision awarding summary judgment in Pan Am's favor. Thank you. Mr. Koffman. Go ahead. Thank you, Your Honor. I disagree with pretty much all of that, Your Honor, with due respect to, of course, everyone here. To begin with, Attorney Baines continues to cite the open run cases, which are clearly inapplicable. She also cited in her brief the old standard on trespassers and every kind of law that is not applicable here. This was not an open run case, and if you look at the pattern jury instructions, there's an exception for open run cases. Otherwise, the duty is to, there's no blowing the horn and seeing if the person gets out of the way. That might have been what they're doing. That's what we think they were doing, but that's not allowed. As soon as they see a person on the tracks, according to SOTO, they are supposed to try to stop, or as soon as they should have seen, as is in many cases in the court of appeals in the lower courts. And the whole idea that there are no facts to support the claim that they either saw or should have seen is ridiculous. I've just cited many. They are approaching a human-sized object in the center of town, knowing people cross there and everything else. They're staring at it, but they can't even tell if it's debris or a garbage bag. Okay? So what is it? Are they honking the horn and waiting for the person to go? At a certain point before 88 feet, they can't see in broad daylight, directly in front of them, that this is a human being, Your Honors? This is ridiculous, and we have enough evidence, and we are entitled, as it says in Coleman and it says in Noseworthy, both of those cases, neither of those cases had another witness, and in Noseworthy, they, the court explicitly stated, and if I might just read that one quote, Your Honor, it says, The station was well lighted and the length of the platform was such that the train must have traveled more than 400 feet on straight level stretch of track inside the lighted station before the accident. All this, we think, made a jury question as to whether or not the defendant's motorman was negligent in failing to see until the train was so close that the disaster was inevitable. And then Judge Desmond went on to say, The Harris case gives the true rule applicable here. In an action for injuries, the person directly charged with having caused the injuries, although he may not be the defendant, is so interested that the jury may be at liberty to disbelieve his testimony, although it is not otherwise impeached or contradicted. Thank you. Thank you, Your Honors. Thank you both.